JOHN M. KIRKMAN, APPELLANT *v.* WILLIAM
BIRD, JR., RESPONDENT, THE RIO GRANDE
WESTERN RAILWAY CO., GARNISHEE AND RE-
SPONDENT.

REMEDY — CHANGE OF —WHAT DOES NOT IMPAIR OBLIGATION OF
CONTRACT. EXEMPTION—OF WAGES—SEC. 7, P. 99, S. L. 1899—
NOT IN VIOLATION OF SEC. 10, ART. 1, CONST. U. S.

*Remedy—Change of—What does not Impair Obligation of Contract.*
Any change or limitation of a remedy which does not materially
abridge the right, does not impair the obligation of the con-
tract.

*Exemption—Of Wages—Sec. 7, p. 99, S. L. 1899—Not in Violation
of Sec. 10, Art. 1, Const. U. S.*
Sec. 7, p. 99, S. L. 1899, which absolutely exempts, to married
men or heads of families, their earnings for personal services
rendered within sixty days next preceding the levy of execu-
tion, by garnishment or otherwise, being reasonable and di-
rected to the remedy and not the right, does not impair the
obligation of contracts entered into prior to its passage and is
not in violation of Sec. 10, Art. 1, Const. U. S.

(Decided May 14, 1900.)

( Appealed to the U. S. Supreme Court.)

Appeal from the Third District Court Salt Lake County.
Hon. A. N. Cherry, *Judge.*

The facts in this case were undisputed, and the real con-
troversy was as to the constitutionality of the exemption
law of Utah, section 7, page 99, Session Laws of 1899,
exempting absolutely the wages of a married man for
sixty days next preceding the levy of execution or gar-

nishment. From a judgment determining the constitutionality of the exemption law, plaintiff appealed. *Affirmed.*

*Messrs. Krebs & Hoppaugh*, for appellant.

The exemption laws in force when the indebtedness herein accrued, are as follows:

Sec. 2439, Vol. 2, Compiled Laws of Utah, 1888, subdivision 7, which exempts: "One-half of the earnings of the judgment debtor for his personal services rendered at any time within sixty days next preceding the levy of execution or levy of attachment when it appears by the debtor's affidavit or otherwise that such earnings are necessary for the use of his family residing in this Territory, supported wholly or in part by his labor." And the amendment of 1896, Ch. 71, Sec. 7, which exempts "One-half of the earnings of the judgment debtor for his personal services rendered at any time within sixty days next preceding the levy of execution. Provided that in no case shall the amount exempt under this act be reduced to less than twenty-five dollars."

The present exemption law (the statute under discussion) is Chapter 66, Sec. 7, Laws of 1899:

The following property is exempt from execution except as herein otherwise especially provided:

The earnings of the judgment debtor for personal services rendered within sixty days next preceding the levy of execution by garnishment or otherwise if the judgment debtor be a married man, or with a family dependent upon him for support.

This chapter contains no express repealer.

That the court may see the full significance of this statute, we call attention to the judicial interpretation which has been given to the words, "earnings of the judgment

debtor for personal services." *McSkiman* v. *Knowlton*, 14 N. Y. Sup. 284; *Millington* v. *Laurer*, 89 Iowa, 322; *Shelly* v. *Smith*, 59 Iowa, 453; *Brown* v. *Hebard*, 20 Wis., 326; *McCoy* v. *Cornell*, 40 Iowa, 457; *Sanford* v. *Goodwin*, N. Y. Daily Register, March 11, 1881. (Cited in *McSkiman* v. *Knowlton*, 14 N. Y. Supp. 284). *Miller* v. *Hooper*, 19 Hun., (N. Y.) 394; *Banks* v. *Rodenbach*, 54 Iowa, 695; *Penn. Coal Co.* v. *Costello*, 33 Penn. State, 241; Seider's Appeal, 46 Penn. State, P. 57.

The decision of the court involves necessarily, two propositions:

1st. That chapter 66, subdivision 7, should be construed to apply retrospectively, and to include contracts made prior to its passage.

2d. That when so applied it is constitutional, and does not impair the obligation of pre-existing contracts.

We believe the court is wrong upon both propositions.

1st. The enactment was not intended to be retrospective in its operation, not to be applied to contracts made prior to its passage. *Shreveport* v. *Cole*, 129 U. S. 36; *Gunn* v. *Barry*, 82 U. S. 610; *Germania Sav. Bank* v. *Village Suspension Bridge*, 54 N. E. 35; *Singer Mfg. Co.* v. *McCollock*, 24 Fed. 667.

2d. There is no question, however, that if the court gives to this statute a retrospective effect, the enactment violates the constitutional inhibition. It takes away all substantial remedy. It leaves a bare right which the creditor cannot enforce. It not only *lessens* the value of the contract, it utterly destroys its value.

*The obligation of a contract is the power of its enforcement.* The forms of its remedy may be changed at the will of the legislature, but when the change obstructs, delays, or lessens the compelling power theretofore existing, it impairs the obligation of the contract. It

is immaterial how this is done, or in what particular the change affects the contract, if *it takes away from the creditor his ability to collect, it impairs the obligation.* *Sturges* v. *Crowninshield,* 4 Wheat. 118; *Green* v. *Biddle,* 8 Wheat. 1; *Bronson* v. *Kinsey,* 1 How. 310; *McCracken* v. *Hayward,* 2 How. 606; *Gantly* v. *Ewing,* 3 How. 706; *Planter's Bank* v. *Sharp,* 6 How. 327; *Howard* v. *Bugbee,* 24 How.; *Curran* v. *Arkansas,* 56 U. S. 304; 4 Wall, 535, *United States* v. *Muscatine,* 75 U. S. 575; *Gunn* v. *Barry,* 82 U. S. 610; *Walker* v. *Whitehead,* 83 U. S. 314; *Rees* v. *Waterton,* 19 Wall, 107; *Edwards* v. *Kearzey,* 96 U. S. 595; *Tennessee* v. *Sneed,* 96 U. S. 69; *Brine* v. *Hartford Ins. Co.,* 96 U. S. 627; *United States* v. *Memphis,* 97 U. S. 284; *Memphis* v. *U. S.* 97 U. S. 293; *Railroad Co.* v. *Tennessee,* 101 U. S. 337; *Louisiana* v. *New Orleans,* 102 U. S. 203; *Daniels* v. *Tearney,* 102 U. S. 415; *Vial* v. *Penniman,* 103 U. S. 714; *Wolff* v. *New Orleans,* 103 U. S. 358; *Louisiana* v. *Pillsbury,* 105 U. S. 278; *Kring* v. *Missouri,* 107 U. S. 221; *Nelson* v. *St. Martin's Parish,* 111 U. S. 716; *Poindexter* v. *Greenhow,* 114 U. S. 270; *Port Mobile* v. *Watson,* 116 U. S. 289; *Siebert* v. *United States,* 122 U. S. 284; *Denny* v. *Bennett,* 128 U. S. 489; *Shreveport* v. *Cole,* 129 U. S. 36; *McGahey* v. *Virginia,* 135 U. S. 662; *Morley* v. *Lake Shore & Mich. S. Ry. Co.,* 146 U. S. 162; *Barnitz* v. *Beverly,* 163 U. S. 118: *Ford* v. *Delta & Pine Land Co.* 164 U. S. 662.

The following changes in the remedy have been held to impair the obligation of the contract:

1. Insolvent laws discharging the debtor's future earnings and property from liability. *Sturges* v. *Crowninshield,* 4 Wheat. 118; *Bank* v. *Smith,* 6 Wheat. 131; *Schwartz* v. *Drinkwater,* 70 Me. 409.

2. State insolvent laws which stay all proceedings and exempt future acquisitions during the stay. *Bank* v. *Squires*, 58 Am. Dec. 682.

3. State insolvent laws depriving creditors of the right to attach. *Denny* v. *Bennett*, 48 U. S. 489; *Wilson* v. *Brochon*, 95 Fed. 82; *Bank* v. *Schranck*, 73 N. W. 31; *P. L. & C. Works* v. *Paint Co.*, 76 N. W. 359; *Heath & Hilligan Mfg. Co.* v. *Paint Co.*, 83 Fed. 777.

4. Statutes extending the time for redemption. *Bronson* v. *Kinzie*, 1 How. 311; *Howard* v. *Bugbee*, 24 How. 46; *Barnitz* v. *Beverly*, 163 U. S. 118; *Coddington* v. *Bispham*, 36 N. J. Eq. 574.

5. Statutes providing that no property shall be sold under execution except upon appraisement, and for two-thirds of its value. *McCracken* v. *Hayward*, 43 U. S. 608; *Gantley* v. *Ewing*, 44 U. S. 707; *United States* v. *Conway*, Fed. Cas. No. 14, 849; *Olmstead* v. *Kellogg*, 47 Iowa, 460.

6. Statutes providing for stay of execution. *Jacobs* v. *Smallwood*, 63 N. C. 112; *Edward* v. *Kearzey*, 96 U. S. 595; *Bily* v. *Gentry*, 1 Missouri, 164; *Chadwick* v. *Moore*, 8 Watts. and S. 49 (49 Am. Dec. 267).

7. A law requiring the payment of taxes as a condition precedent to the suit. *Walker* v. *Whitehead*, 83 U. S.; *Lathrop* v. *Brown*, Fed. Cas. No. 8, 108; *Mitchell* v. *Cothrans*, 49 Ga. 125.

8. A statute requiring the production of the original State bond before paying coupons. *McGahey* v. *Virginia*, 135 U. S., 662.

9. Where the creditor relies upon a particular means of satisfaction, such as a definite tax levy or other dependable source, accruing in the future, the legislature cannot deprive him of his source of payment. *Ford* v. *Land Co.*, 164 U. S., 622; *Seibert* v. *U. S.*, 122 U. S., 284;

*Poindecker* v. *Greenhow*, 114 U. S. 270; *Nelson* v. *St. Martin's Parish*, 111 U. S. 716; *Wolf* v. *New Orleans*, 103 U. S., 358; *Van Hoffman* v. *Quincy*, 4 Wall, 535.

10. A legal remedy, such as a right to foreclose in case the mortgagee deems himself insecure, which is incorporated in the contract, cannot be changed by legislation. *Boice* v. *Boice*, 27 Minn. 371; *Billmeyer* v. *Evans*, 40 Pa. 324.

11. Exemption laws increasing the amount of property exempt from execution. *Edwards* v. *Kersey*, 96 U. S., 595; 12 A. & E. Enc. Law, 2d Ed., 166 and cases cited.

From the above, it seems self evident that exemption laws which increase the property reserved to the debtor, enacted after the making of the contract, impair its obligation.

But are not the future earnings of the debtor, property? Is not this source of performance tangible, and could it not have been the subject of contract? In hundreds of cases railroad men, once employed, have permanent position for life and certainly their wages are fixed, and their employer known. Such unearned wages are susceptible of assignment. The debtor could have assigned them to the creditor as security for the debt. *Hawley* v. *Bristol*, 39 Conn. 26; *Augur* v. *New York Belting, etc., Co.*, 39 Conn. 536; *Harrop* v. *Landers, etc., Co.*, 45 Conn. 561; *Metcalf* v. *Kincaid*, 87 Iowa, 443; *Wade* v. *Bessey*, 76 Me. 413; *Pullen* v. *Monk*, 82 Me. 412; *Shaffer* v. *Union Min. Co.* 55 Md. 74; *Ouimit* v. *Sirois*, 124 Mass. 162; *Papineau* v. *Naumkeag Steam Cotton Co.*, 126 Mass. 372; *Kane* v. *Clough*, 36 Mich. 436, 24 Am. Rep. 599; *Runnells* v. *Bosquet*, 60 N. H. 479; *Carter* v. *Nichols*, 58 Vt. 553; *State* v. *Hastings*, 15 Wis. 76.

The new exemption law does not abolish merely a statutory remedy, it destroys all means of enforcement.

*Messrs. Bennett, Harkness, Howat, Sutherland &
Van Cott*, for garnishee.

The garnishee, The Rio Grande Western Railway Co.
has no interest in this case except to pay the amount it
owes for the labor of the co-respondent Bird, to the party
to whom, in law, it is due, and to protect itself from a
double liability in case it pays to the wrong party. When
notified by Bird of his claim of exemption, it was its duty
to state the facts and submit the decision to the courts.
As the statute law distinctly grants the exemption, it was
not for the garnishee to declare the law unconstitutional.
It stands as stakeholder, ready to pay the party entitled
to receive the money. The case, on the merits, stands
between the other parties.

Appellants cites cases to show what construction has
been put on the words, "earnings of the debtor." We
have not examined all the cases cited, but some of them,
notably the Iowa citations, distinctly hold the exemption
does not apply to profits on a business conducted by a
judgment debtor, or income or profits derived from capital
invested, and *Shelby* v. *Smith*, 59 Iowa, 453, is an
example of these cases. If there are any cases supporting
the text of the brief, that if a "railroad promoter floats a
scheme, or a mining broker sells a mine, each can claim
his rake-off as exempt," they must be cases where the
promoter or broker had nothing in the venture except his
own services. Even if, in an occasional case, the earn-
ings should be large and exempt, the policy of the law as
applied to the vast number of laborers, who have stated
and moderate wages, would not be affected.

Chapter 66, Sec. 7, Laws of 1899, which exempts earn-
ings of the judgment debtor, for services within sixty
days preceding a garnishment, is not unconstitutional.

Prior to the decision of *Edwards* v. *Kearzey*, 96 U. S. 595, the great weight of authority was to the effect that laws increasing exemptions from levy and sale, did not affect the contract, but related only to the remedy, and were not unconstitutional. This is practically conceded in appellant's brief, and the cases are cited in Vol. 12, p. 167, Enc. of Law, 2d Ed. and notes, and need not be repeated. The existence or non-existence of a lien seems to have been the test. *Gunn* v. *Barry*, 15 Wall. 610; *Wilson* v. *Brown*, 29 Am. R. 727.

It becomes important to see what was decided in *Edwards* v. *Kearzey, supra.*

The result of the leading opinion is briefly stated, on page 607, to be that a "subsequent law of the state which so affects the remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution."

From the decision in the case Justice Harlan dissented, and Justices Clifford and Hunt concurred specially on the ground that the increase of exemption was excessive and affected the contract, but they hold, in effect, that a reasonable subsequent exemption may be made; and this, we contend is the result of the case when all of the opinions are considered.

It therefore leaves open the question, what subsequent exemptions are excessive and impair the contract? This being, in effect, a question as to what is reasonable, the decision must be influenced by the surrounding circumstances, and therefore should be decided with reference to the legislative discretion; for the value of lands, the nature of business, the customary means of conducting it, and the amount of exemptions required by a debtor, change with the locality.

In *Johnson* v. *Fletcher*, 28 Am. R., 388, it was held

that a change of exemption from one to two horses was material.

In Homestead Cases (Va.), 12 Am. R., 509, there is a *dictum* (p. 520) that there is no middle ground and that any change is unconstitutional. The case did not call for such an opinion for the subsequent exemption was of a homestead of the value of $2,000.

These we think are the only cases cited in appellant's brief which directly affect the point in this case, that is, that the increase in exemption is reasonable and does not substantially affect a prior contract.

The following cases support the proposition that it is only unreasonable exemptions which are deemed to impair the contract:

"It is not competent for the legislature, under color of an exemption law, so to obstruct the remedy upon contracts as to render it nugatory or impracticable." *Stephenson* v. *Osborne*, 90 Am. Dec. 359.

Unless in clear cases, the legislature should decide what exemptions are reasonable. *Garrett* v. *Cheshire*, 12 Am. Rep. 647.

The legislature of each state can best judge what is necessary and reasonable with reference to the conditions of the state, the pursuits in which the people are engaged, the kind of property needed for subsistence and the extent to which exemptions are necessary. *Garrett* v. *Cheshire*, 12 Am. R. 647.

BASKIN, J.

There is no controversy in regard to the facts in this case which are, as follows:

That on the 13th of May, 1896, the defendant was indebted to the plaintiff for goods and merchandise previously sold by the latter to the defendant; that on that

day the plaintiff recovered on said indebtedness, a judgment for $285.47, and costs amounting to $11.25; that on the 12th of December, 1899, an execution was issued on said judgment, and the Rio Grande Western Railway Company was garnisheed; that said company, on the 28th of December, 1899, answered "that it was indebted to the defendant in the sum of $77.50 for services rendered from November 1st to December 12, 1899, inclusive, which was subject to the claim of plaintiff; that the same was exempt from execution; that the defendant was before and at the date of said garnishment, and had ever since been a married man with a wife and child dependent upon him for support, and that he and his wife and child were before and at the date of said garnishment, and ever since have been residents of Salt Lake City, Utah."

The respondent William Bird, Jr., also filed an answer, alleging the same facts set up by said company.

A. L. Hoppaugh, one of the attorneys for the plaintiff, made and filed an affidavit admitting the facts alleged in the foregoing answers, except the conclusion that said earnings were exempt from execution, and stating that at the time said goods and merchandise were sold and said judgment rendered, the said Bird had no property except his monthly earnings for personal services, and that one-half of said earnings, at the last named dates were and ever since have been subject to the execution of said judgment.

It is also admitted that defendant has no property upon which execution can be levied, or out of which said judgment can be satisfied if all of the earnings of said defendant are exempt from execution.

The respondents claim exemption under an act of the legislature, approved March 9, 1899, (Laws 1899, Sec. 7,

p. 99), which exempts from execution "The earnings of the judgment debtor for personal services rendered within sixty days next preceding the levy of the execution, by garnishment or otherwise, if the judgment debtor be a married man, or with a family dependent upon him for support."

The court below held that said earnings, under said provision, were exempt and rendered judgment accordingly.

The appellant contends that the legislature did not intend that said provision should have any retroactive effect, and that the judgment in this case giving it such effect, is in violation of Sec. 10, Art. 1, of the Constitution of the United States, and impairs the obligation of the implied contract between the parties which arose, upon sale of the said goods and merchandise, previous to the passage of said act.

At the date of the implied contract and the rendition of said judgment, under the attachment law then in force, garnishment of one-half, only, of the defendant's earnings for his personal services, rendered within sixty days preceding service on the garnishee, was permissible. 2 Comp. Laws 1888, p. 307, Subd. 7. and Laws of 1896, Sec. 7, p. 214.

Sec. 7 of the Act of 1899, did not abolish the remedy by garnishment, but simply amended the former act, so as to exclude the whole of such earnings for services rendered during such period from the operation of that process, when the judgment debtor is a married man or has a family dependent upon him for support. So that the alleged injury complained of in this case is said limitation of the remedy by garnishment. Therefore, the only question presented is whether this limitation impairs the obligation of the contract. The remedy by garnishment is

purely statutory, and not a common law right. 9 Am. & Eng. Enc. of Law, 809; Drake on Attachment, Sec. 451a.

In the case of *Sturges* v. *Crowningshield*, 4 Wheat. 200, Chief Justice Marshall said: "Without impairing the obligation of the contract the remedy may certainly be modified as the wisdom of the nation shall direct." In that case it was held that the remedy of imprisonment (which existed at common law) might be abolished without impairing the obligation of the contract.

In the case of *Bronson* v. *Kinzie, et al.*, 1 How. 315, Chief Justice Taney, in the opinion said: "Undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every state to enable it to secure its citizens from unjust and harrassing litigation, and to protect them in those pursuits which are necessary to the existence and well being of every community. And, although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution."

In the case of *Edwards* v. *Kearzey*, 96 U. S. 607, the court sums up its conclusions in this language:

"The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and, is therefore, void."

Justice Clifford in a concurring opinion in the foregoing case on pages 608-9, said: "Beyond all doubt, a state legislature may regulate all such proceedings in its courts at pleasure, subject only to the condition that the new regulation shall not in any material respect impair the just rights of any party to a pre-existing contract. Authorities to that effect are numerous and decisive; and it is equally clear that a state legislature may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or certain articles of universal necessity in household furniture, shall, like wearing-apparel, not be liable to attachment and execution for simple contract debts. Regulations of the description mentioned have always been considered in every civilized community as properly belonging to the remedy to be exercised or not by every sovereignty, according to its own views of policy and humanity."

And Justice Hunt in a concurring opinion in the same case page 610, said: "I think that the law was correctly announced by Mr. Chief Justice Taney in *Bronson* v. *Kinzie* (1 How. 311) when he said: A state 'may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household furniture, shall, like wearing apparel, be not liable to execution on judgments.'"

In the case of *Tennessee* v. *Sneed*, 96 U. S. 74, Justice

Hunt, in delivering the opinion of the court, said: "On the general subjects and for numerous illustrations reference is made to the following cases: *Bronson* v. *Kinzie*, 1 How. 311 (before quoted from) and *Von Hoffman* v. *City of Quincy*, 4 Wall. 553. In the latter case it was stated that "The right to imprison for debt is not a part of the contract. It is regarded as penal rather than remedial. The states may abolish it whenever they think proper. They may also exempt from sale, under execution, the necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture. It is said: 'Regulations of this description have always been considered in every civilized community as properly belonging to the remedy, to be exercised by every sovereignty according to its views of policy and humanity.'

"It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those, which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances." See, also, *Penman's Case*, 103 U. S. 714; *McGaghey* v. *Virginia*, 135 U. S. 662; *Perego* v. *Dodge*, 163 U. S. 160; Cooley's Const. Lim. 346 *et seq.*; Suth. Stat. Const. 477, 483. In Suth. on Stat. Const. Sec. 482, it is stated: "No person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights. * * * A remedy may be provided for existing rights, and new remedies added to or substituted for those which exist. Every case must to considerable extent depend upon its own circumstances.

22 Utah—8.

General words in remedial statutes may be applied to past transactions and pending cases, according to all indications of legislative intent, and this may be greatly influenced by considerations of convenience, reasonableness and justice.".

Judge Cooley in his work on Const. Lim. p. 346, says, "Such being the obligation of a contract, it is obvious that the rights of the parties in respect to it are liable to be affected in many ways by changes in the laws, which it could not have been the intention of the constitutional provision to preclude. 'There are few laws which concern the general policy of a state, or the government of its citizens, in their intercourse with each other or with strangers, which may not in some way or other affect the contracts which they have entered into or may thereafter form."

Creditors as well as debtors are presumed to know that the legislature has an inherent power to enlarge, limit, alter or repeal remedial statutes, provided that contracts are not directly impaired, and a remedy be left, though less convenient and less prompt and speedy, than the one so changed or repealed. Also, to enact such laws as "according to its own views of policy and humanity, it may deem necessary to protect the citizens of the state from unjust, merciless and oppressive litigation and other evils detrimental to the common weal; and protect them in those pursuits of industry, and secure to them those privileges and rights which experience has already shown or in the future may be shown to be necessary to the prosperity and strength of the state, although such necessary laws may in some way or other affect contracts previously entered into." Among such necessary laws are police regulations, exemptions from forced sales on execution of necessary implements of agriculture, the tools of

mechanics, necessary household furniture for the use of the family, and their wearing apparel; exemption of a portion of the wages of laborers, etc.

Parties making contracts, I think, should be charged with notice that the legislature has a right to make such necessary changes in the laws, and that it should be presumed that they intended their contracts to be subject to such reasonable and necessary changes.

Judge Cooley in his work on Const. Lim. 707–8, states the proposition thus: "The occasions to consider this subject in its bearings upon the clause of the Constitution of the United States which forbids the States passing any laws impairing the obligation of contracts have been frequent and varied; and it has been held without dissent that this clause does not so far remove from State control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the state and the protection of the rights of individuals as may be deemed important. All contracts and all rights, it is declared, are subject to this power; and not only may regulations which affect them be established by the state, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity."

In the Dartmouth College Case, 4 Wheat. 429, Chief Justice Marshall uses this language: "The framers of the Constitution did not intend to restrain the states in the regulation of their civil institutions adopted for internal government, and that instrument they have given us is not to be so construed."

Certainly any change or limitation of the remedy which does not materially abridge the right, does not impair the

obligation of the contract. As stated in *Van Hoffman* v. *City of Quincy*, 4 Wall. 554, "every case must be determined upon its own circumstances."

In the case at bar it is conceded that the defendant has a family dependent upon him for support, and that his only means of doing so is his wages. It is a matter of common knowledge that at the time and previous to the passage of the act, limiting the remedy by garnishment, many other citizens of the state were in the same situation as the defendant, and that owing to the financial crisis which prevailed, it was a difficult task for the laborer to earn sufficient to properly support his family. In view of these facts the limitation of the remedy of garnishment was reasonable and necessary, and is not such a change as impairs the obligation of the contract.

It is ordered that the judgment of the court below be affirmed, and that the appellant pay the costs.

BARTCH, C. J., and MINER, J., concur.