**In re William Joseph STEWART and Janice Ilene Stewart, Debtors.**

**In re Courtney B. FAIRBOURNE and Ileen R. Fairbourne, Debtors.**

**Bankruptcy Nos. 82C–00011, 82C–00159.**

United States Bankruptcy Court, D. Utah.

July 24, 1983.

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, for trustee in Fairbourne.

Stephen W. Rupp, McKay, Burton, Thurman & Condie, Salt Lake City, Utah, for debtors in Fairbourne.

George H. Searle, Salt Lake City, Utah, for debtors in Stewart.

Sharon Peacock, Asst. Atty. Gen., for the State of Utah.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

## INTRODUCTION

Debtors in these chapter 7 cases claim exemptions in wages earned but not paid on the filing dates of their petitions. Utah law, effective May 12, 1981, *see* 9A Utah Code Ann. §§ 78–23–1 to 78–23–15 (Utah Exemptions Act), prohibits Utah debtors from claiming exemptions under 11 U.S.C. § 522(d). Thus, debtors claim exemptions in wages under both state and federal law found in 7B Utah Code Ann. § 70B–5–105 and 15 U.S.C. §§ 1671–1677. *See* 11 U.S.C. § 522(b)(2)(A).

The trustee in each case objected to the claimed exemptions in wages based on rulings made in *In re Olsen,* Bankr. No. 81–02999 (Bk.D.Utah, transcript of ruling, Nov. 23, 1981), *In re Lane,* Bankr. No. 81–03205 (Bk.D.Utah, transcript of ruling, Feb. 2, 1982), and *In re Collins,* Bankr. No. 81–03200 (Bk.D.Utah, transcript of hearing, Feb. 2, 1982). In those cases it was held that neither Section 70B–5–105 of the Utah Uniform Consumer Credit Code nor 15 U.S.C. §§ 1671 to 1677 provides a bankruptcy exemption for pre-petition wages.

Debtors contend that the Utah Exemptions Act, insofar as it denies them an exemption in wages, is unconstitutional for various reasons. The court's reconsideration of the rulings in *Olsen, Lane,* and *Collins* makes a determination of these constitutional issues unnecessary. On June 21, 1983, Judge Mabey reversed the rulings in *Olsen, Lane,* and *Collins. In re Hughes,* Bankr. No. 82M–00409; *In re Wienhauser,* Bankr. No. 82M–00334; *In re Thurgood,* Bankr. No. 82M–00439; *In re Tarver,* Bankr. No. 82M–00495; *In re Darr,* Bankr. No. 82M–00505; *In re Adams,* Bankr. No. 82M–00543.

## DISCUSSION

An exemption for wages has been a vital element of debtor protection in Utah since its territorial days, when wage exemptions received frequent attention in the territorial legislature.[1] After Utah gained state-

---

1. *See,* for example, Acts, Resolutions, and Memorials Passed by the First Annual, and Special Sessions, of Legislative Assembly of the Territory of Utah, An Act Concerning the Judiciary, and for Judicial Purposes, Sec. 22 (Sept. 22, 1851) (exempted all earnings of debtor or debtor's family within 90 days of levy); Acts, Resolutions, and Memorials Passed at the Several Annual Sessions of the Legislative Assembly of the Territory of Utah, Sec. 21 (Feb. 4, 1852)

hood in 1896, the Utah legislature enacted the following statute, which provided an exemption in

> One-half of the earnings of the judgment debtor for his personal services, rendered at any time within sixty days next preceding the levy of execution. *Provided,* that in no case shall the amount under this act be reduced to less than twenty-five dollars.

Laws of Utah, Chapter LXXI, Sec. 3429 s. 570(7) (1896) (emphasis in original).

In 1898, that statute was amended to read as follows:

> One-half of the earnings of the judgment debtor for his personal services, rendered at any time within sixty days next preceding the levy of execution; *provided,* that in no case when the earnings are one dollar a day or less, shall any part thereof be liable to execution or garnishment.

Revised Statutes of Utah, Sec. 3245(7) (1898) (emphasis in original).

The wage exemption statute was amended again in 1899 as follows:

> The earnings of the judgment debtor for personal services rendered within sixty days next preceding the levy of the execution, by garnishment or otherwise, if the judgment debtor be a married man, or with a family dependent upon him for support [are exempt from execution].

Laws of Utah, Chapter 66, Sec. 3245(7) (1899).

In 1900, the Utah Supreme Court reviewed the changes in the Utah wage exemption law between 1896 and 1899 and explained the reason for increasing the amount of the exemption:

> It is a matter of common knowledge that, at the time and previous to the passage of the act limiting the remedy by garnishment, many . . . citizens of the state [had families to support] . . . and that, owing

to the financial crisis which prevailed, it was a difficult task for the laborer to earn sufficient to properly support his family.

*Kirkman v. Bird,* 22 Utah 100, 61 P. 338 (1900).

In 1901, however, the legislature limited the wage exemption to

> One half of the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or levy of attachment by garnishment or otherwise, when it appears by the debtor's affidavit that he is a married man, or head of family, and that such earnings are necessary for the use of his family, residing in this state, supported wholly or in part by his labor; *provided,* that when the earnings are two dollars a day or less, such married man or head of family shall be entitled to an exemption of $30 per month.

Laws of Utah, Chapter 31, Sec. 3245(7) (1901). This same wage exemption continued for fifty years. In 1951, the legislature amended the last portion of the section quoted above to read

> provided, that a married man or head of family shall be entitled to an exemption of not less than $50 per month.

Laws of Utah, Chapter 58, Sec. 1 (1951) (former Section 78–23–1(7) Utah Code Ann. (1953)).

The Bankruptcy Act of 1898 incorporated the state wage exemption statute as a bankruptcy exemption in wages in Section 6 of the Bankruptcy Act, former 11 U.S.C. § 24. The long-standing practice of the referees in bankruptcy in this district was to apply the Utah wage exemption to allow a bankrupt to retain one-half of the gross monies earned within the thirty day period preceding bankruptcy and to require the bankrupt to account to the trustee for the

---

(exempted all earnings of debtor or debtor's family within 90 days of levy); Acts, Resolutions and Memorials of the Territory of Utah, Title VII, Chapter 1, Sec. 219(7) (1870) (exempted all earnings of debtor or debtor's family within 60 days of levy); Laws of the Territory of Utah, Chapter XV, Sec. 219 (1882) (exempt-

ed earnings of debtor or debtor's family within 60 days of levy up to $100); Comp.Laws of Utah, Chapter LV, Sec. 570(7) (1884) (exempted one-half of debtor's earnings within 60 days of levy if necessary for the use of debtor's resident family supported wholly or in part by debtor).

other one-half for the benefit of creditors. *See In re Cornelius Workman.* Bankr. No. B–432–67 (Bk.D.Utah, unpublished memorandum decision, Jenkins, referee, July 2, 1968).

In 1969, the Utah Legislature enacted the Utah Uniform Consumer Credit Code. Sections 70B–5–105 and 5–106 of that statute respecting garnishment took effect on July 1, 1970 in order to coincide with Title III of the federal Consumer Credit Protection Act, Pub.L. No. 90–321, 82 Stat. 146, § 504(c), 90th Cong. (May 29, 1968). *See* Section 70B–9–101(4); Bennett, "The Political History of the U3C in Utah," 23 PERS. FIN.L.Q.REP. 75 n. 2 (1969). The federal Consumer Credit Protection Act defers to any state law with garnishment limitations more generous to debtors than those provided by the federal law. *See* 15 U.S.C. § 1677. But the garnishment provisions of the Utah Uniform Consumer Credit Code are both more and less generous to debtors than the federal law. Section 70B–5–105 is more generous to debtors than the federal statute, as far as it goes, because it uses a multiplier of forty times the federal minimum wage to calculate the exemption while 15 U.S.C. § 1673 uses a multiplier of thirty. Section 70B–5–105 is less generous to debtors than the federal statute because it applies only to garnishments to enforce judgments "arising from a consumer credit sale, consumer lease, or consumer loan." § 70B–5–105(2). Thus, after July 1, 1970, there was some confusion in Utah over the applicability of either Section 70B–5–105 or 15 U.S.C. § 1673. Confusion was compounded by the legislature's failure to repeal Section 78–23–1(7), which exempted one-half of the earnings of the judgment debtor for personal services rendered within thirty days preceding the garnishment.

Uncertainty led to legal controversy. *See, for example,* Opinion No. 70–058 of the Attorney General for the State of Utah (October 1, 1970). The State of Utah applied for, but was denied, an exemption from enforcement of the federal statute. *See* Opinion of Wage-Hour Administration, U.S. Dept. of Labor, No. 1168 (WH–121) (Feb. 5, 1971), *cited in* Comment, "Utah's

UCCC: Boon, Boondoggle, or Just Plain Doggle," 1972 UTAH L.REV. 133, 146 n. 79. Differences between the Utah and federal statutes led to court challenges of the Utah garnishment rules. *See King v. City Court of Murray,* Civ. No. 12425 (Utah Sup.Ct., petition for writ of prohibition filed Mar. 2, 1971) (petition dismissed June 7, 1971 without opinion); *King v. City Court of Murray,* Civ. No. 199978 (3d Dist.Ct., petition for writ of prohibition filed June 22, 1971) (dismissed for lack of prosecution Sept. 3, 1980); Comment, *supra.* In the *King* cases, petitioners asked the Utah Supreme Court and the Third Judicial District Court to amend the Utah Rules of Civil Procedure relating to garnishments. Both cases, however, were dismissed.

Legal doubt surrounding Utah's garnishment rules lessened after the Utah Supreme Court amended Rule 64D(e)(v) of the Utah Rules of Civil Procedure effective November 1, 1972. The amendment provided that all garnishments in Utah would be limited by the amounts fixed in Section 70B–5–105 of the Utah Uniform Consumer Credit Code.

Thus, at the time of the consideration and passage of the Utah Exemptions Act, wage exemptions in Utah were governed by Section 70B–5–105 of the Utah Uniform Consumer Credit Code and by Rule 64D, which incorporates Section 70B–5–105. Chapter III, Section 1, of the Laws of Utah, 1981, which enacted the Utah Exemptions Act, repealed former Section 78–23–1(7). The legislature, however, demonstrated no intent to repeal or replace Rule 64D or Section 70B–5–105.

Section 78–23–15 of the Utah Exemptions Act provides

> No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of section 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this chapter.

An initial reading of Section 78–23–15 may prompt the conclusion that it says Utah

debtors in bankruptcy may exempt only such property as is expressly mentioned in chapter 23 of title 78. That conclusion, however, may be questioned. Section 78–23–15 is composed of two parts: a rule and an exception to that rule. The rule is that individuals may not exempt from property of the estate in bankruptcy proceedings the property specified in 11 U.S.C. § 522(d), the section providing federal exemptions in bankruptcy. The exception is that individuals may exempt from property of the estate in bankruptcy proceedings the property specified in 11 U.S.C. § 522(d) if expressly permitted to do so under chapter 23 of title 78 of the Utah Code. Present chapter 23 of title 78 of the Utah Code does not permit individuals to claim any of the federal bankruptcy exemptions.

Section 78–23–15 does not prohibit Utah debtors in bankruptcy from claiming Utah exemptions not included in chapter 23 of title 78. Section 78–23–15 prohibits federal not state exemptions. In other words, Section 78–23–15 performs the prohibitive function specified in Section 522(b)(1) not the permissive function specified in Section 522(b)(2)(A).

Utah exemptions not included in chapter 23 of title 78 are significant. For example, exemptions are enacted for public assistance payments in Section 55–15–32, for public school employees retirement benefits in Section 53–29–46, and for fees paid to retired school employees in Section 53–29–56. All of these exemptions are given expressly to protect property from "the operation of any bankruptcy or insolvency law." Sections 55–15–32, 53–29–46, and 53–29–56. Other exemptions not provided in chapter 23 of title 78 include exemptions for workmen's compensation payments in Section 35–1–80, for occupational disease payments

in Section 35–2–35, for military property owned by members of the national guard in Section 39–1–47, and for retirement benefits of state and public safety employees in Sections 49–10–48 and 49–11–43.

Exempt from garnishment under Utah statutes not found in chapter 23 of title 78 are firemen's retirement benefits, Section 49–6a–36, judges' retirement benefits, Section 49–7a–33 and earnings of any individual, Section 70B–5–105 and Rule 64D, Utah Rules of Civil Procedure. Neither the legislative history nor the language of the Utah Exemptions Act manifests an intention to repeal these exemptions for debtors in bankruptcy.[2] Indeed, Chapter III of the 1981 Laws of Utah, the statute which enacted the Utah Exemptions Act, repealed only the exemptions found in former Section 78–23–1 (providing exemptions from execution) and former chapter 1 of title 28 (providing for a homestead exemption).

Because Utah has forbidden the use of the exemptions specified in Section 522(d), Section 522(b)(2) of title 11, U.S.C., governs the exemptions available in bankruptcy proceedings in Utah. Under subsection (A), an individual debtor may exempt from property of the estate

> any property that is exempt under federal law, other than subsection (d) of this section, or state or local law that is applicable on the date of the filing of the petition.

Thus, under Section 522(b)(2)(A), debtors in bankruptcy in Utah may exempt property exempt under federal law other than Section 522(d) and, in addition, may exempt property exempt under Utah law applicable on the date of the filing of the petition. On the date of the filing of the petitions in these cases, Utah law granted exemptions

---

**2.** Whether a state may enact exemptions for use only in bankruptcy is discussed in Woodward, "Exemptions, Opting Out, and Bankruptcy Reform," 43 OHIO STATE L.J. 335, 363–366 (1982) (questions whether a challenge to bankruptcy-only exemptions will succeed). At least 7 states have enacted bankruptcy-only exemptions: Arkansas, Georgia, Iowa, Kentucky, North Dakota, Ohio, and West Virginia. *Id.* at 364 n. 179. Had Utah attempted to provide a

wage exemption for debtors outside bankruptcy but at the same time have debtors in bankruptcy without a wage exemption, that attempt might have been questioned. In *In re Reynolds,* 24 B.R. 344 (Bkrtcy.S.D.Ohio 1982), the court found Ohio's bankruptcy-only exemption statute invalid. *Contra, In re Bloom,* 5 B.R. 451 (Bkrtcy.N.D.Ohio 1980) and *In re Vasko,* 6 B.R. 317 (Bkrtcy.N.D.Ohio 1980).

not only in Sections 78–23–1 to 78–23–15 of the Uniform Exemptions Act, but also provided exemptions in many other laws, including Rule 64D of the Utah Rules of Civil Procedure and Section 70B–5–105. Rule 64D and Section 70B–5–105 together exempt wages for Utah debtors in bankruptcy.[3]

This conclusion is supported both by Utah law and policy. Section 70B–5–105 of the Utah Uniform Consumer Credit Code was intended to protect consumers from destitution caused by excessive wage garnishments. Section 70B–1–102 of the Consumer Credit Code provides that the Code "shall be liberally construed and applied to promote its underlying purposes and policies." By adopting and enforcing Section 70B–5–105 as part of Rule 64D, the Utah Supreme Court has acknowledged the importance of a wage exemption for all Utah debtors. Utah law has long recognized the need for an exemption in wages to protect debtors and their families from hardship. Wage exemptions, like other Utah exemptions, are "necessary to the prosperity, strength, and general welfare of the state," *Folsom v. Asper,* 25 Utah 299, 71 P. 315 (1903), especially in times of financial crisis. *Kirkman v. Bird, supra.* Utah law limiting the garnishment of earnings has traditionally received a liberal construction in favor of debtors. *Miller v. Givan,* 7 Utah 2d 380, 325 P.2d 908 (1958). Given these considerations, the court is convinced that the Utah legislature did not intend to deprive Utah debtors in bankruptcy of an exemption in wages.

A draft exemptions bill considered by the Interim Judiciary Study Committee appointed by the Utah legislature to study Utah's exemption laws contained a $500 exemption in cash and other liquid assets for individuals claiming a homestead exemption and $1,500 for individuals not claiming a homestead exemption. On June 18, 1980, the Committee voted to delete this exemption. Minutes of the Judiciary Study Committee, June 18, 1980. This vote may be interpreted . as a desire to foreclose a wage exemption for Utah debtors. Another interpretation, however, is more plausible.

The cash exemption came from a similar provision in the Uniform Exemptions Act promulgated in 1976 by the National Conference of Commissioners on Uniform State Laws.[4] The cash or liquid asset exemption in the Uniform Act and in the draft Utah Exemptions Act defined the term "liquid assets" to include "unpaid earnings not otherwise exempt." *See* Section 8, Uniform Exemptions Act and Section 78–23–2(8) of the draft bill before the Judiciary Study Committee and attached to the minutes of

---

**3.** Utah Rules of Civil Procedure, such as Rule 64D, are promulgated by the Utah Supreme Court and, by statute, "may not abridge, enlarge or modify the substantive rights of any litigant." 9A Utah Code Ann. § 78–2–4. Nevertheless, Rule 64D has been interpreted by the Utah Supreme Court to have, in effect, the force of a statute. In *State Tax Commission v. Meier,* 547 P.2d 1333 (Utah 1976), the Utah State Tax Commission obtained a judgment for delinquent taxes and, based on the judgment, procured the issuance of a writ of garnishment and attached the judgment debtor's wages. A controversy arose as to whether the State Tax Commission was bound by the limitations set forth in Rule 64D. While the Utah Supreme Court recognized that there were no state law exemptions to the payment of delinquent taxes, *see* former Section 78–23–3, the Tax Commission was bound by Rule 64D because the Tax Commission elected to proceed under the rules of civil procedure to procure the issuance of a garnishment. The court also concluded that the federal garnishment statute did not apply.

Justice Ellett dissented. He argued that Section 78–23–1(7) not Rule 64D applied because a determination of the amount of exemptions was a matter of substantive law not one of procedure. Section 78–23–3 of the Utah statutes provided that no property was to be exempt from sale for taxes. In Justice Ellett's view, Rule 64D could not overrule the statute. Nevertheless, the court ruled that Rule 64D was binding on the Tax Commission. Even if Rule 64D did not have statutory force in Utah, Section 522(b)(2)(A) permits debtors to claim exemptions under state "law" without limiting the term "law" to statutes. A contrary construction of Section 522(b)(2)(A) would preclude state exemptions provided by court rule or case law, a result inconsistent with the broad term "law".

**4.** For a more complete analysis of the legislative history of the Utah Exemptions Act, *see In re Neiheisel,* 32 B.R. 146 (1983).

the Committee's meeting held on June 18, 1980. Thus, the cash or liquid asset exemption in the draft bill recognized that other exemptions in wages might exist. The official comments to the Uniform Exemptions Act show that the cash or liquid asset exemption was "independent of the exemption of earnings provided by the Federal Consumer Credit Protection Act ... and the Uniform Consumer Credit Code ... or other state wage garnishment statutes." *See* Official Comment to Section 8 of the Uniform Exemptions Act. Moreover, the Uniform Act's official comments indicate that the Uniform Act is intended to deal with the exemption of property "other than personal earnings." Official Comment to Section 24. The Uniform Act was not meant to "displace statutory provisions for exemption of personal earnings in the states that have enacted § 5.105 of the Uniform Consumer Credit Code or other provisions extending greater protection against a creditor's levy on personal earnings than is provided by the Consumer Credit Protection Act." Official Comment to Section 24. Thus, the deletion by the Judiciary Study Committee of the exemption in the draft bill for cash or other liquid assets, even though that exemption was defined to include earnings, does not necessarily signal a repeal for debtors in bankruptcy of the wage exemptions in Section 70B–5–105 and Rule 64D.

While it may be argued that Section 70B–5–105 and Rule 64D are garnishment not bankruptcy exemption laws, that argument assumes that the exemptions referred to in 11 U.S.C. § 522(b)(2)(A) must expressly provide for an exemption in bankruptcy. Section 522(b)(2)(A) permits Utah debtors to exempt from property of the estate "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition." The word "exempt" in Section 522(b)(2)(A) does not require the exemption law in question to specify that the exemption be available

in bankruptcy. This is evident from the legislative history of Section 522(b)(2)(A), which provides that "the debtor may choose the Federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile. If the debtor chooses the latter, some of the items that may be exempted under other Federal laws include

> Foreign Service Retirement and Disability payments, 22 U.S.C. 1104; Social security payments, 42 U.S.C. 407; Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717; Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601; Civil service retirement benefits, 5 U.S.C. 729, 2265 [8346]; Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916; Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L); Veterans benefits, 45 U.S.C. 352(E); Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175."

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 75 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316. Of the ten federal statutes named as proper exemptions under Section 522(b)(2)(A), only two make any mention of providing an exemption in bankruptcy. Thus, for a nonbankruptcy exemption to qualify as an exemption under Section 522(b)(2)(A), the nonbankruptcy law is sufficient if it provides an exemption from process and need not provide an exemption in bankruptcy.[5] With this construction, Section 522(b)(2)(A) conforms to Section 522(b)(2)(B), which permits an exemption from property of the estate of certain interests held as a tenant by the entirety or joint tenant to the extent the interest "is *exempt from process* under ap-

---

5. *Compare In re Goff,* 706 F.2d 574, 583 (5th Cir.1983) (Applying an "exemption from creditors' process" test to the determination of

whether ERISA provides federal nonbankruptcy law exemption under Section 522(b)(2)(A).)

plicable nonbankruptcy law." (emphasis supplied).

A construction of Section 522(b)(2)(A) requiring the nonbankruptcy law under which a bankruptcy exemption is sought expressly to provide for an exemption in bankruptcy might bar the use of the Utah Exemptions Act by Utah debtors in bankruptcy. The Utah Exemptions Act nowhere says its exemptions may be claimed in bankruptcy. "Exempt" is defined to mean "protected" and "exemption" is defined to mean "protection from subjection to a judicial process to collect an unsecured debt." While Section 78–23–15 refers to bankruptcy law, that reference, as explained above, serves only to forbid the use of federal bankruptcy exemptions.

Construing Utah and bankruptcy law to provide Utah debtors in bankruptcy an exemption in wages is faithful not only to the federal and Utah statutes, but also to bankruptcy policy. An exemption in wages will aid debtors in beginning a fresh economic start. An exemption in wages will free trustees, debtors, and their attorneys from some of the administrative burdens of collecting and turning over wages. Finally, an exemption in wages will diminish dishonesty. Most individual debtors who file petitions in bankruptcy desperately need cash for food, utility service, medical services, and other necessities. It may be difficult to arrange for wages to be paid and spent by the time the bankruptcy petition is filed. Thus, where pre-petition wages are delivered to debtors who already have filed, there is a temptation to conceal and spend wages if none are exempt. This temptation will be reduced if there is a wage exemp-

tion.[6] Bankruptcy law, as the Commission on the Bankruptcy Laws of the United States concluded, "should not itself stimulate dishonesty." REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, Part I, Chapter 3, 82 (1973).[7]

Because Utah law provides an exemption for wages and because Utah limitations on garnishment are more generous to debtors than those imposed by 15 U.S.C. § 1673, it is not necessary to inquire whether 15 U.S.C. § 1673 provides an exemption in bankruptcy for wages.[8] *See* 15 U.S.C. § 1677.

### CONCLUSION

Individual debtors in bankruptcy in Utah, may claim an exemption in earnings unpaid but earned as of the dates of the filing of their petitions in bankruptcy as provided in Rule 64D of the Utah Rules of Civil Procedure and Section 70B–5–105 of the Utah Uniform Consumer Credit Code. Under the principles announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), this decision should not be applied retroactively except as set forth below. The holding of this case, because it departs from an earlier holding, was not clearly foreshadowed by earlier cases. Retrospective operation would retard the operation of the holding of this case with respect to administrative efficiency where estates have been administered and wages already turned over to trustees are not now available. Finally, retroactive application could produce substantial inequitable results in individual cases. However, in cases where trustees have received from debtors

---

**6.** The Utah Exemption in wages is presently keyed to the federal minimum hourly wage of $3.35 per hour which has been in effect since January 1, 1981. *See* Amendment to Administrative Rule 10 Re: Garnishment of Wages, published by M.D. Borthick, Administrator, Utah Uniform Consumer Credit Code, State Department of Financial Institutions, Dec. 8, 1980.

**7.** The Commission made this comment in the context of tax returns not exempt in bankruptcy, recommending an exemption because the failure of debtors to turn over income tax re-

funds had been the cause of denials of discharge although there was little evidence of intentional misconduct.

**8.** Although that question has been answered elsewhere in the negative, *see In re Brissette,* 561 F.2d 779 (9th Cir.1977); *In re Taff,* 10 B.R. 101 (Bkrtcy.D.Conn.1981), persuasive arguments support the opposite conclusion. *See* Vukowich, "Debtors' Exemption Rights Under the Bankruptcy Reform Act," 58 N.C.L.Rev. 769, 791 n. 189–192 (1980).

wages which can be exempted under Rule 64D and Section 70B–5–105 and where the wages are still on hand and a proposed final order of distribution has not been prepared, trustees should return exempt wages to debtors. Copies of this decision shall be delivered to all chapter 7 trustees. An order is entered with this opinion.

## ORDER

The objections of the trustees in the above referenced cases to debtors' claimed exemptions in wages are overruled for the reasons given in the memorandum decision filed with this order.